# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| CHRIS PURCELL, *et al.* | : | CIVIL ACTION |
| --- | --- | --- |
| | : | |
| v. | : | NO. 17-3523 |
| | : | |
| GILEAD SCIENCES, INC. | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                                               **November 15, 2019**

As our Court of Appeals recently reminded us, we presume the public may access court filings. Requests to preclude public access must satisfy our rigorous analysis of the alleged basis. We may seal portions of public filings when, for example, the public filing contains investigative strategies employed by the United States or the disclosure would harm non-parties not involved with our deliberations. We apply this same principle of public access to filings under the False Claims Act where former employees allege their former employer defrauded the United States and after the United States declined to intervene. We today continue the seal on portions of the United States' four motions which detail prospective investigative strategies and on portions of former employees' earlier amended complaint identifying persons no longer in the case.

## I. Background

In this *qui tam* action brought under the False Claims Act[1] (the "Act") and the *qui tam* laws of twenty-eight states and the District of Columbia, relators Chris Purcell and Kimberly Groome allege their former employer Gilead Sciences, Inc. committed fraud by marketing for "off-label" use certain drugs used in the treatment of Hepatitis B, Hepatitis C, and HIV causing the submission of false claims to federal healthcare programs.

The Act imposes liability on any person who, *inter alia*, "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;" "knowingly makes, uses, or

causes to be made or used, a false record or statement material to a false or fraudulent claim;" or "conspires to commit a violation" of the Act.[2] Under the Act, private persons may bring a civil action for a violation of Section 3729 for themselves and for the United States, brought in the name of the United States.[3] A complaint must be filed "in camera, and shall remain under seal for at least 60 days, and shall not be served on the defendant until the court so orders."[4] The United States may elect to intervene in the action and "may, for good cause shown, move the court for extensions of time during which the complaint remains under seal ...."[5]

Relators filed their initial complaint under seal on August 7, 2017.[6] They sued Gilead only. The case remained under seal until the United States decided whether to intervene. Over an approximately eighteen-month period, we granted four motions filed by the United States to extend its time to intervene while it investigated the claim.[7] The motions described, in part, prospective investigative steps. The seal remained in place. During this investigation period, Relators filed an amended complaint naming seventeen physicians along with Gilead.[8]

Our April 24, 2019 Order granting a fourth extension allowed the United States until October 7, 2019 to determine whether to intervene.[9] On September 13, 2019, Relators' new counsel moved for leave to file a second amended complaint.[10] The Relators decided to drop claims against the seventeen physicians identified in the amended Complaint. We granted Relators' motion for leave to file a second amended Complaint under seal pending the United States' decision on whether to intervene.[11]

On October 7, 2019, the United States declined to intervene and requested we unseal the Complaint.[12] Although it takes no position on the Relators' motion to keep the amended Complaint naming seventeen physicians under seal, the United States requested "all other papers on file in this action remain under seal because in discussing the content and extent of the United

2

States' investigation, such papers are provided by law to the Court alone for the sole purpose of evaluating whether the seal and time for making an election to intervene should be extended."[13]

We ordered, *inter alia*, the second amended Complaint with exhibits unsealed and Relators effect service on Gilead.[14] We also ordered the United States' Notice of Election to decline intervention and all subsequent filings "shall not be filed under seal absent pre-filing approval from this Court upon a showing of good cause."[15] Our Order allowed any party to show cause why filed documents should remain under seal; absent good cause we would lift the seal on all filed documents.

In response, Relators moved to unseal the original and second amended Complaint but to continue the seal on the amended Complaint.[16] Alternatively, Relators seek permission to redact the names of the seventeen individual physicians named in the amended Complaint but who are no longer defendants in the second amended Complaint. Relators additionally request we redact the names of the individual physicians from the docket.

The United States, in response to our show cause order, requests its motions for extension of the seal and investigatory period remain under seal to protect its investigative process.[17]

**II.     Analysis**

The issue is what earlier-filed pleadings can remain under seal after the United States declined to intervene. Whether to keep a seal on certain filings after lifting the seal "is a matter for the court's exercise of discretion."[18] The Act's language speaks only to the complaint: "[t]he complaint shall be filed in camera, shall remain under seal for at least 60 days, and shall not be served on the defendant until the court so orders" but the United States, "for good cause shown, move the court for extensions of the time during which *the complaint* remains under seal ...."[19] The Act "is simply silent on this issue, providing no indication that Congress intended to modify

3

the default rule that 'the decision as to access (to judicial records) is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case."[20]

Our Court of Appeals recently outlined "three distinct standards when considering various challenges to the confidentiality of documents": (1) we apply the factors in *Pansy v. Borough of Stroudsburg*[21] to confidentiality of discovery materials under Federal Rule of Civil Procedure 26; (2) we apply a "more rigorous common law right of access to discovery materials filed as court documents" and "begin[ ] with a presumption in favor of public access";[22] and (3) "the First Amendment right to public access attaches to, *inter alia*, civil trials."[23]

We are asked to continue the seal on two categories of documents: (1) the amended Complaint naming seventeen physicians no longer named in the case (along with the docket), and (2) the United States' four motions for an extension of the intervention deadline and seal. We apply the "more rigorous common law right to access" and its presumption attaching to "judicial proceedings and records."[24] If we find a common law right of access to the documents at issue here, we need not reach the First Amendment question.[25]

The United States does not argue, or even mention, *Avandia's* standards. Relators recognize *Avandia's* presumption of right of access, but argue they have "compelling, countervailing interests to be protected."

Common law presumes the public has a right of access to judicial materials.[26] The common law right to access attached "to judicial proceedings and records."[27] Whether the right to access "applies to a particular document or record 'turns on whether that item is considered to be a 'judicial record.'"[28] A "judicial record" is a document "filed with the court … or otherwise somehow incorporated or integrated into a district court's adjudicatory proceedings."[29]

4

The presumption of access to judicial proceedings and records is not absolute and may be rebutted.[30] "The party seeking to overcome the presumption of access bears the burden of showing 'that the interest in secrecy outweighs the presumption.'"[31] Here, Relators and the United States each must show "that the material is the kind of information that courts will protect and that disclosure will work a clearly defined and serious injury to the party seeking closure."[32] To overcome the strong presumption of access, we must articulate "'the compelling, countervailing interests to be protected,' make 'specific findings on the record concerning the effects of disclosure,' and 'provide[ ] an opportunity for interested third parties to be heard.'"[33] We must conduct a "document-by-document review" of the challenged documents, provide "specific examples of harm or articulated reasoning," and balance the competing interests between the public's right to access and a "clearly defined and serious injury to the party seeking closure."[34] When considering requests to keep documents sealed, courts generally "lift[ ] the seal on the entire record except for specific documents that: '(1) reveal confidential investigative methods or techniques; (2) jeopardize an ongoing investigation; or (3) harm non-parties.'"[35]

### A. Relators may timely file a notice attaching the amended complaint redacting the names of the seventeen physicians.

Relators, former employees of Gilead, request we continue to seal the amended complaint or, alternatively, redact the names of the seventeen physicians named as defendants in the amended Complaint. Relators also request we redact the names of the seventeen physicians from the docket.

Relators make three arguments why their interests justify keeping the amended Complaint under seal: (1) fear of retaliation in the pharmaceutical industry for naming seventeen physicians as defendants in this *qui tam* case; (2) embarrassment to the seventeen defendants who are no longer named defendants in this action; and (3) the common law right to access only extends to material on which a judicial decision is based, and because the amended Complaint is no longer

5

operative, we will not make any decisions on it going forward in this litigation.

Relators explain they "continue to work in the same field and rely on" the seventeen physicians as customers and fear "the stigma our society attaches to whistleblowers will have a negative impact on their continued livelihood and may prevent them from obtaining future employment opportunities in the industry."[36] Although they characterize naming seventeen physicians as an "extraordinary step," Relators do not explain why they did so knowing their identities as Relators will eventually become public. They explain only their "new lead counsel" filed the second amended Complaint naming Gilead as the sole defendant. Relators argue the amended Complaint naming seventeen physicians "make this situation unique and gives rise to a reasonable and heightened fear by Relators of severe economic harm and loss of likely employment in the pharmaceutical industry."[37]

Relators argue Congress intended to protect whistleblowers from retaliation for reporting fraud. Relators concede they "accepted the possibility of retaliation when they decided to go forward" with a *qui tam* case against their former employer Gilead, but they argue the amended Complaint should be sealed because the second amended Complaint will be made public; there is no need to reveal the amended Complaint; there is a "greatly increased … possibility of retaliation"; and there is no public benefit to be gained by unsealing the amended Complaint.

Relators next argue publicly identifying the seventeen physicians who were never served with the amended Complaint, who are no longer defendants, and who are "not relevant to the litigation at hand … could result in embarrassment" to the physicians.[38]

Finally, Relators argue the purpose of the common law right of access is "to check judicial abuses … [and] that right should only extend to materials upon which a judicial decision is based" and does not extend to "documents that do not form the basis of a judicial ruling on substantive

6

issues."[39] For these reasons, Relators argue sealing the amended Complaint only—*not* the original Complaint or the now operative second amended Complaint and the remainder of the docket—effectively balances the public's right to access against the Relators' interests.

Relators do not provide us with authority continuing the seal on an amended complaint after unsealing a later amended complaint. Relators cite two cases—*Wilk v. American Medical Association* and *FTC v. Standard Financial Management*—to support their argument the amended Complaint is not a judicial record to which the common law right of access applies. *Wilk* is distinguishable and *Standard Financial Management* does not support Relators' argument.

In *Wilk*, the United States Court of Appeals for the Seventh Circuit reviewed a protective order governing discovery under Rule 26. In a footnote, the court distinguished cases protecting discovery from disclosure under Rule 26 and cases "dealing with the power of courts to limit access to documents and information in their possession."[40] Distinguishing discovery materials, the court explained "unless and until introduced into evidence, the raw fruits of discovery are not in possession of a court" and "[i]f the purpose of the common law right to access is to check judicial abuses … then that right should only extend to materials upon which a judicial decision is based."[41] In *Standard Financial Management*, the United States Court of Appeals for the First Circuit held the common law presumption of public access attached to financial statements submitted to the Federal Trade Commission on which it relied to reach a consent decree and submitted to the court for its assessment of the reasonableness of the consent decree.[42] *Wilk* is limited to discovery material and *Standard Financial Management* held financial statements assessed by the court constituted documents to which the right of access attached and does not support Relators' argument their amended Complaint is not a "judicial record."

Relators' reliance on *Doe v. Megless* does not support their position.[43] In *Doe*, a plaintiff

7

suing a school district sought to proceed anonymously. Plaintiff appealed when the district court denied his motion to proceed anonymously and then dismissed his claims with prejudice when he failed to proceed using his real name. Our Court of Appeals affirmed the district court, noting the balancing test district courts apply where a litigant sufficiently alleges he "has a reasonable fear of severe harm from litigation without a pseudonym against the public's strong interest in an open litigation process."[44] In concluding the district court did not abuse its discretion in denying plaintiff's motion to proceed anonymously, our Court of Appeals "acknowledge[d] the thumb on the scale that is the universal interest in favor of open judicial proceedings."[45]

Relators' generalized claims of possible future retaliation towards them in the pharmaceutical industry do not overcome the strong presumption of public access to filings. Relators are no longer employed by Gilead but work in the pharmaceutical industry "and rely on [the seventeen physicians] as customers." Relators fear the "stigma" attached to whistleblowers on their continued livelihood and which may prevent them from obtaining future employment in the pharmaceutical industry. Relators understand their identities will be revealed when the second amended Complaint is unsealed and will be identified as "whistleblowers." Whatever "stigma" associated with whistleblowers will happen whether Relators' *qui tam* claims are brought against Gilead or Gilead and the physicians. Speculative and vague conclusions of "stigma our society attached to whistleblowers" and possible "negative impact" on Relators' continued livelihood possibly preventing them from future employment do not outweigh the strong presumption of public access to judicial materials.[46]

We are similarly unpersuaded by Relators' suggestion the amended Complaint is not a judicial record; it is a judicial record having been filed on the docket. But the amended Complaint will not be "incorporated or integrated into [our] adjudicatory proceedings"[47] because it is no

8

longer the operative Complaint. We will not seal the second amended Complaint, but are concerned with publicly revealing the names of seventeen non-party physicians whom Relators alleged improperly received kickbacks or other improper remuneration from Gilead causing false claims to be submitted to federal programs. The Relators withdrew allegations as to these non-parties. We presume they both filed the amended Complaint and they decided not to sue the physicians in good faith. But we are mindful of the stigma of government fraud allegations against physicians. The Relators do not believe they have a claim involving these physicians. We presume new counsel, consistent with Federal Rule 11, reconsidered a good faith basis to sue them. But if the Relators bring them back into the case or they become witnesses subject to examination on their bias arising from being dismissed, we may lift the seal on the presently filed amended complaint.

In balancing the competing interests between the public's right to access and potential injury to seventeen physicians who are no longer parties, we grant Relators' motion only to continue the seal on the presently-filed amended Complaint conditioned upon the Relators filing a "Notice under the Court's November 15, 2019 Order" attaching the same amended Complaint but redacting the names of the seventeen physicians and references to their specific names (not paragraphs including them) but we will lift the seal on the amended Complaint if a identified physician otherwise becomes part of the judicial record including to show bias in testimony. We will not seal a public docket or redact names from the docket. We cannot find the required particularized harm from a name being identified on a docket. This is a public courthouse.

### B. We allow the United States to redact portions of its memoranda for extension of the seal and investigatory period.

The United States requests we continue the seal on its four motions[48] for extension of the seal and investigatory period because those documents discuss the content and extent of its

investigation into Relators' claims. The United States argues it filed extensions to the "Court alone for the sole purpose of evaluating whether the seal and time for making an election to intervene should be extended" and contains the "government's investigative processes." The United States argues its declination notice "along with the complaint" will be unsealed, affording transparency and access. It further argues unsealing its extension motions "would likely lead the government to be more circumspect in revealing to the courts the course of its investigations and the government's research and decision-making, which in turn would reduce the government's ability to show good cause for any seal extension."

We balance "the need for the information sought by the movant against the harm to the Government by the disclosure of the information."[49] We draw guidance from sealing orders under Fed.R.Civ.P. 26(c) governing trade secrets.[50] Under this paradigm, "courts have refused to unseal the government's extension requests where unsealing would disclose confidential investigative procedures, jeopardize an ongoing investigation or injury nonparties."[51] We unseal extension requests revealing "only 'routine investigative procedures which anyone with rudimentary knowledge of investigative processes would assume would be utilized in the regular course of business ... and [contain] no information about specific techniques.'"[52]

Applying principles used in evaluating seal orders on trade secrets, we must keep records open for public inspections regardless of any objection. We should be concerned about the privacy interests of innocent third parties which should weigh heavily in our balancing equation and narrowly tailor its confidentiality solely to third party information when the third parties did nothing to give rise to the suit. The parties and the Court must demonstrate, on a document-by-document, line-by-line basis, the specific information in the Court record meeting the demanding requirements for a seal.

10

The United States asks we retain an indefinite seal on its four requests for extensions of the seal and investigatory period. While there is no claim for disclosure, we are independently obligated to keep the public courthouse records open to the public after balancing harm to investigative processes. We agree portions of the United States' four memoranda filed in support of its extension motions contain specific investigative techniques. The remaining aspects of the memoranda do not disclose techniques. We will allow the United States to redact from its memoranda: the first and second full paragraphs on page 5 of ECF Doc. No. 4; the first and second full paragraphs of page 4 of ECF Doc. No. 6; the second full paragraph on page 5 of ECF Doc. No. 14; and the second, third, and fourth paragraphs in subsection B, pages 4 and 5 of ECF Doc. No. 16.

On balance, this limited information regarding the United States' investigative strategy in the extension memoranda shall remain under seal until December 31, 2021, unless the United States shows good cause on or before December 17, 2021 as to why this information concerning this investigation in this industry continues to be imbued with a need for confidentiality.

### III. Conclusion

In the accompanying Order, we grant in part and deny in part the Relators' motion to seal the amended Complaint and the United States' motion to seal its four requests for extension of the seal and investigatory period.

---

[1] 31 U.S.C. § 3729 *et seq.*

[2] 31 U.S.C. § 3729(a)(1)(A), (B), (C).

[3] 31 U.S.C. § 3730(b)(1).

[4] *Id.* at § 3730(b)(2).

[5] *Id.* at § 3730(b)(2), (3).

[6] ECF Doc. No. 1.

[7] ECF Doc. Nos. 5, 7, 15, 17.

[8] ECF Doc. No. 10.

[9] ECF Doc. No. 17.

[10] ECF Doc. No. 18.

[11] ECF Doc. No. 20.

[12] ECF Doc. No. 24.

[13] *Id.* at 4, n.1.

[14] ECF Doc. No. 25.

[15] *Id.* at ¶ 2.

[16] ECF Doc. No. 28. Our October 8, 2019 Order unsealed the second amended complaint. *See* ECF Doc. No. 25 at ¶ 1.

[17] ECF Doc. No. 29.

[18] *United States ex rel. Brasher v. Pentec Health, Inc.*, 338 F. Supp. 3d 396, 401 (E.D. Pa. 2018) (citing *United States ex rel. Erickson v. Univ. of Washington Physicians*, 339 F. Supp. 2d 1124, 1126 (W.D. Wash. 2004)).

[19] 31 U.S.C. § 3730(b)(2), (3) (emphasis added).

[20] *United States ex rel. Kammarayil v. Sterling Operations, Inc.*, No. 15-1699, 2018 WL 6839747, at *3 (D.D.C. Dec. 31, 2018) (quoting *United States v. Hubbard*, 650 F.2d 293, 316-17 (D.C. Cir. 1980)).

[21] 23 F.3d 772, 783–92 (3d Cir. 1994).

[22] *In re Avandia Marketing, Sales Practices and Prods. Liab. Litig.*, 924 F.3d 662, 670 (3d Cir. 2019) (citing *Goldstein v. Forbes (In re Cendant Corp.)*, 260 F.3d 183, 192-93 (3d Cir. 2001)).

[23] *Id.* (citing *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1061 (3d Cir. 1984)).

[24] *Id.* at 672.

[25] *Id.* at 679-80 (declining "to define the parameters of the First Amendment right in a case where the common law right affords sufficient protection").

[26] *Id.* at 672.

[27] *Id.* (quoting *In re Cendant Corp.*, 260 F.3d 183, 192 (3d Cir. 2001)).

[28] *Id.*

[29] *Id.*

[30] *Id.* (quoting *Bank of Am. Nat. Trust and Sav. Ass'n v. Hotel Rittenhouse Assoc.*, 800 F.2d 339, 344 (3d Cir. 1986)).

[31] *Id.*

[32] *Id.* (quoting *Miller v. Indiana Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994)).

[33] *Id.* at 672-73 (quoting *In re Cendant Corp.*, 260 F.3d at 194).

[34] *Id.* (quoting *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 167 (3d Cir. 1993); *Miller*, 16 F.3d at 551; and *In re Cendant Corp.*, 260 F.3d at 194).

[35] *Brasher*, 338 F. Supp. 3d at 402 (quoting *United States ex rel. Lee v. Horizon W., Inc.*, No. 00-2921, 2006 WL 305966, at * 2 (N.D. Cal. Feb. 8, 2006)).

[36] ECF Doc. No. 28 at 14. We use the pagination assigned by the CM/ECF docketing system.

[37] *Id.* at 8.

[38] *Id.*

[39] *Id.* at 10 (quoting *Wilk v. Am. Med. Ass'n*, 635 F.2d 1295, 1299 n.7 (7th Cir. 1980) and citing *FTC v. Standard Fin. Mgmt. Corp.* 830 F.2d 404, 408 (1st Cir. 1987)).

[40] *Wilk*, 635 F.2d at 1299 n.7.

[41] *Id.* (internal citation omitted).

[42] *Standard Financial Management*, 830 F.2d at 408-410.

[43] 654 F.3d 404 (3d Cir. 2011).

[44] *Id.* at 408-09.

[45] *Id.* at 411.

[46] *Brasher*, 338 F. Supp. 3d at 402-03; *United States ex rel. Littlewood v. King Pharmaceuticals, Inc.*, 806 F. Supp. 2d 833, 841-42 (D. Md. 2011).

[47] *Avandia,* 924 F.3d at 672.

[48] ECF Doc. Nos. 4, 6, 14, 16.

[49] *United States ex rel. Ryan v. Endo Pharm., Inc.*, Nos. 05-3450, 10-2039, 11-7767, 2014 WL 5364908, at *2 (E.D.Pa. Oct. 22, 2014) (citing *United States v. Educ. Mgmt. LLC*, Nos. 07-461,07-791, 2013 WL 4591317, at *2 (W.D.Pa. Aug. 28, 2013)); *United States ex rel. O'Keefe v. McDonnell Douglas Corp.*, 902 F.Supp. 189, 192 (E.D.Mo. 1995).

[50] *United States ex rel. Reed v. Endo Health Solutions, Inc.*, No. 13-3102, 2015 WL 12552049, at *3 (E.D.Pa. June 8, 2015) (citing *United States ex rel. Yannacopolous v. Gen. Dynamics*, 457 F.Supp.2d 854, 858 (N.D.Ill.2006) and *United States el rel. Erickson v. Univ. of Wash.*, 339 F.Supp.2d 1124, 1126 (W.D.Wash. 2004)).

[51] *Reed,* 2015 WL 12552049 at *3 (citing *United States ex rel. Mikes v. Straus,* 846 F.Supp. 21, 23 (S.D.N.Y. 1994) and *O'Keefe,* 902 F.Supp. at 191).

[52] *Id.* (quoting *Mikes,* 846 F.Supp. at 23).